IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| | **8:24-CR-195** |
| vs. | |
| PHILIP D. AUSHERMAN, | **MEMORANDUM AND ORDER ON** |
| Defendant. | **MOTIONS IN LIMINE** |

This matter is before the Court on two Motions in Limine filed by defendant Philip D.

Ausherman. Filing 227; Filing 240. A jury trial in this matter is set for April 20, 2026. Filing 211.

On February 18, 2025, the grand jury returned a seven-count Superseding Indictment against six

defendants, including Ausherman. Filing 41. Ausherman has been charged in two of those counts.

In Count I of the Superseding Indictment, Ausherman is charged with conspiracy to possess with

intent to distribute 50 grams or more of methamphetamine (actual) in violation of 21 U.S.C. §

841(a)(1), 21 U.S.C. § 841(b)(1)(A), and 21 U.S.C. § 846. Filing 41 at 1–2. Count VII charges

Ausherman with possession with intent to distribute a detectable amount of a mixture or substance

containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21

U.S.C. § 841(b)(1)(C). Filing 41 at 3–4. The Superseding Indictment also contains a Forfeiture

Allegation. Filing 41 at 4–5.

On April 15, 2026, Ausherman filed a Motion in Limine containing nine requests. Filing

227. Ausherman also filed a brief in support of his first Motion in Limine. Filing 229. Later that

same day, the Government filed a Notice of Expert Witness Testimony Pursuant to Rule

1

16(a)(1)(G). Filing 234. Ausherman promptly filed a Response to Government Notice of Expert Witness, Filing 239, and a Motion in Limine and Daubert Motion, Filing 240. Ausherman's second Motion in Limine seeks to "exclude or strictly limit the proposed expert testimony of Sergeant William Koepke as disclosed" in the Government's Notice. Filing 240 at 1. The Government has responded to Ausherman's first Motion in Limine. Filing 255. For the reasons below, the first Motion in Limine is granted in part and denied in part. The second Motion in Limine is denied.

## I.   BACKGROUND

The background to this case is set out in detail in the magistrate judge's Findings and Recommendation on Ausherman's Motion to Suppress, Filing 181, and in the parties' trial briefs, Filing 218 and Filing 226. As relevant here, Ausherman was arrested by Deputy Anthony Crawford of the Douglas County Sheriff's Office on the night of January 29, 2025, after Deputy Crawford conducted a traffic stop of Ausherman. Filing 170 at 11, 12. Both before and during the traffic stop, Deputy Crawford grew suspicious that Ausherman was involved with narcotics. Filing 170 at 14–16, 19–20, 26–28. While Deputy Crawford was checking Ausherman's records during the traffic stop, Deputy Crawford received a call from Deputy Daniel Eads, a narcotics investigator with the Douglas County Sheriff's Office, informing Deputy Crawford that Ausherman was the target of an investigation. Filing 170 at 29. Deputy Crawford called for a drug K-9 to assist with the stop, and the K-9 indicated to the odor of narcotics. Filing 170 at 29–31. A search of Ausherman's vehicle revealed methamphetamine. Filing 170 at 32. Ausherman was arrested and transported to the Sheriff's Office, where he was interviewed by Deputy Eads. Filing 170 at 32.

## II.  ANALYSIS

### A.  Ausherman's First Motion in Limine (Filing 227)

The Court begins with Ausherman's first Motion in Limine, Filing 227, which is really a series of motions:

1. Motion in Limine to Exclude "Cartel" and Guilt-by-Association Evidence.

2. Motion in Limine to Exclude Prior Bad Acts, Prior Arrests, and Prior Investigative Targeting.

3. Motion in Limine to Exclude Hearsay Investigative Narration.

4. Motion for Rule 104(a) Hearing and to Suppress or Exclude Alleged Post-Arrest Statements.

5. Motion for Rule 104(a) Hearing on Digital Evidence.

6. Motion in Limine to Exclude Residence-Search Evidence Not Specifically Tied to Defendant.

7. Motion to Require Itemized Chain-of-Custody and Quantity Proffer.

8. Motion in Limine to Limit Expert and "Training and Experience" Testimony.

9. Request for Limiting Instructions.

Filing 227 at 1–3. Ausherman has supported each "submotion" with a paragraph of explanation in his Motion in Limine itself and a paragraph of explanation in his brief. *See* Filing 227; Filing 229. The Court will address each submotion in more detail below, however, the Court notes that at this point in the proceedings, many of Ausherman's requests are nebulous and not directed at specific evidence. The Court therefore denies many of Ausherman's requests without prejudice to reassertion at trial when they can be raised as objections to particular evidence or occurrences.

### 1.  *Submotion 1: Motion in Limine to Exclude "Cartel" and Guilt-by-Association Evidence*

Ausherman first asks the Court to "exclude any reference to a 'Mexican Drug Trafficking Organization,' 'cartel,' 'drug courier,' or similar inflammatory characterization unless the

government first establishes outside the presence of the jury that the terminology is relevant to a material issue and supported by admissible evidence specifically tied to Mr. Ausherman." Filing 227 at 1. Ausherman argues that the Government's Trial Brief, Filing 218, "repeatedly uses the terms 'Mexican Drug Trafficking Organization' and 'courier' and relies heavily on allegations involving other people charged in the broader investigation." Filing 229 at 2. Ausherman contests the relevancy of those terms under Federal Rules of Evidence 401 and 402, as well as their probative value and prejudicial effect under Federal Rule of Evidence 403. Filing 229 at 2. According to Ausherman, "[u]nless the government can tie that evidence directly to Mr. Ausherman with admissible proof, its principal effect will be to inflame the jury and invite conviction by association rather than by proof of the charged elements." Filing 229 at 2.

Submotion 1 is denied. The Court does not agree with Ausherman that the phrases "Mexican Drug Trafficking Organization," "cartel," and "drug courier" are inflammatory or that they require a preliminary hearing before they can be heard by the jury. *See* Fed. R. Evid. 104(c). Rather, those phrases are standard and frequently used in drug trafficking cases like this one. The Government has stated that the theory of its case is that Ausherman was part of a Mexican Drug Trafficking Organization that distributed methamphetamine in Nebraska and Iowa using local couriers. *See* Filing 218 at 1. The Court is confident that the Government is aware of its obligation to "tie [ ] evidence directly to Mr. Ausherman with admissible proof," and the Court will not require the Government to try its case twice—once outside the presence of the jury and once before the jury. Filing 229 at 2. Moreover, the prosecutor will be permitted to "describ[e] what the government [will] attempt to prove" in his opening statement even though the underlying evidence has not yet been offered or admitted. *United States v. Branch*, 591 F.3d 602, 609 (8th Cir. 2009) (quoting *United States v. Shoff*, 151 F.3d 889, 893 (8th Cir. 1998)). Of course, Ausherman is entitled to object during

4

trial to any evidence he believes is inadmissible, and he can challenge the sufficiency of the Government's evidence under Federal Rule of Criminal Procedure 29. The Court notes that this submotion is too vague for the Court to know exactly what Ausherman's counsel is talking about, and the Court does not allow blanket objections to unspecified evidence. The Court will consider any objections to specific evidence made during trial, but it will not rule in the abstract here.

2. *Submotion 2: Motion in Limine to Exclude Prior Bad Acts, Prior Arrests, and Prior Investigative Targeting*

In Submotion 2, Ausherman "moves to exclude evidence of prior arrests, prior convictions, prior narcotics allegations, or testimony that he was previously under investigation, except as permitted by Federal Rules of Evidence 404(b) after advance notice and prior ruling by the Court." Filing 227 at 1. Ausherman explains that "[t]he record indicates that officers relied on prior narcotics history and on another officer's claim that Mr. Ausherman was already under investigation," and he argues that "[s]uch evidence is inadmissible to prove that he acted in conformity with a supposed criminal character." Filing 229 at 2. Apart from referencing "another officer's claim that Mr. Ausherman was already under investigation," Ausherman does not identify any specific evidence he would like the Court to exclude under Rule 404(b). Instead, Submotion 2 appears to be largely a request that the Court apply the Federal Rules of Evidence at trial. That the Court will do so goes without saying and is not a proper basis for a motion in limine.

To the extent Submotion 2 seeks exclusion of "another officer's claim that Mr. Ausherman was already under investigation" pursuant to Rule 404(b), that request is denied at this time. Having previously reviewed the transcript and evidence from the evidentiary hearing on Ausherman's Motion to Suppress, Filing 118, the Court understands Ausherman to be referring to Deputy Crawford's testimony about the night of Ausherman's arrest. Specifically, Deputy Crawford

5

testified that during the January 29, 2025, traffic stop of Ausherman, he ran Ausherman's name "over the radio" as part of a records check and immediately received a call from a narcotics investigator, Deputy Eads, informing Deputy Crawford that Deputy Eads was investigating Ausherman for "working with one of the cartels as a drug courier." Filing 170 at 28–29. The Court agrees with the Government that evidence that Ausherman was the target of a previous investigation does not fall under Rule 404(b)'s prohibition of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character." Fed. R. Evid. 404(b)(1); Filing 255 at 2.

The Eighth Circuit Court of Appeals has held that Rule 404(b) "does not apply to evidence 'intrinsic' to the charged offense." *United States v. Guzman*, 926 F.3d 991, 999 (8th Cir. 2019) (quoting *United States v. Thomas*, 760 F.3d 879, 883–84 (8th Cir. 2014)). "Intrinsic evidence is evidence of wrongful conduct other than the conduct at issue offered for the purpose of providing the context in which the charged crime occurred" and includes "both evidence that is inextricably intertwined with the crime charged as well as evidence that merely completes the story or provides context to the charged crime." *Id.* at 999–1000 (cleaned up). The Court concludes that evidence that Ausherman was being investigated for drug trafficking conduct at the time he was arrested in this case is "inextricably intertwined" with the charged crimes of conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine, or that "at the very least it complete[s] the story or provide[s] context to [those] crime[s]." *Id.* at 1000. Depending on how the Government seeks to offer such evidence at trial, Ausherman can certainly challenge it on other evidentiary grounds, but the Court will overrule a Rule 404(b) challenge at this time.

The Government has stated that it will likely call charged and uncharged coconspirators to testify against Ausherman and "their testimony will include prior bad acts of the Defendant

6

committed in furtherance of the conspiracy." Filing 255 at 3. Because "[e]vidence is 'intrinsic' if it is part of the charged conspiracy, shows its inner workings, or completes the story of how the conspirators operated," the Court will preliminarily rule that such testimony is admissible as intrinsic evidence and is not subject to Rule 404(b). *United States v. Patterson*, 131 F.4th 901, 909 (8th Cir. 2025) (citing *United States v. Ruiz-Chavez*, 612 F.3d 983, 988 (8th Cir. 2010)); *see also United States v. Jones*, 880 F.2d 55, 59 (8th Cir. 1989) (explaining that evidence of a coconspirator's "drug-related activity through the 1980s was evidence of the very conspiracy charged against all the named defendants" and "thus went directly to the crime charged and fell outside the purview of 'prior bad acts'"). However, the Court does not presently rule on the relevance and probative value of such testimony, given that the Court has no specific details about the anticipated testimony. Any further objection to the evidence needs to be made at the time the evidence is offered.

3. *Submotion 3: Motion in Limine to Exclude Hearsay Investigative Narration*

Ausherman next asks the Court to "bar the government from eliciting out-of-court accusations through law-enforcement witnesses under the guise of explaining the course of the investigation, including any statement that another officer said Mr. Ausherman was a distributor, courier, or target of a cartel-related investigation." Filing 227 at 2. Ausherman contends that "[t]he government should not be permitted to present its case through the mouths of officers repeating what others told them" and cites the "principle" that "so-called course-of-investigation testimony cannot be used as a conduit for out-of-court accusations." Filing 229 at 3. Ausherman specifies that he is concerned with "what Deputy Eads allegedly told Crawford and what other residents allegedly told officers." Filing 229 at 3. The Court believes the arguments in Submotion 3 will be better made as objections to specific evidence at trial. The Court therefore denies Submotion 3 without prejudice to reassertion at trial.

4.  *Submotion 4: Motion for Rule 104(a) Hearing and to Suppress or Exclude Alleged Post-Arrest Statements*

In Submotion 4, Ausherman requests "a hearing on the admissibility of any alleged post-arrest statement attributed to him, including any claimed admission that he distributed methamphetamine, used code words, or purchased pound quantities." Filing 227 at 2. Ausherman also "moves to suppress or exclude such statements unless the government proves Miranda compliance, voluntariness, and reliability." Filing 227 at 2. According to Ausherman, "[t]he government's most damaging allegation is that Mr. Ausherman admitted to repeated pound-level methamphetamine trafficking" but "discovery materials expressly state there is no recording of the interview and reflect uncertainty as to when Miranda warnings were administered." Filing 229 at 3. The Government affirms that it intends to offer Ausherman's "post arrest statement" and represents that it "will establish that it was voluntarily given and in compliance with *Miranda*." Filing 255 at 3. The Government points out that Ausherman did not challenge the voluntariness of his post-arrest statement in his Motion to Suppress, Filing 118, but explains that it will be prepared "should the Court want to conduct a hearing and inquiry of the witness who conducted the Defendant's post arrest interview" outside the presence of the jury. Filing 255 at 3–4.

In his Motion to Suppress, Ausherman contended that his traffic stop on January 29, 2025, was unlawful, and he sought the suppression of "all evidence gathered because of [the stop], including the subsequent search of his vehicle, his post-arrest interview, and the search of his phone." Filing 118 at 1. Notably, Ausherman never once argued—in his Motion to Suppress, in his supporting brief, or during the suppression hearing—that his post-arrest interview was involuntary or that it did not comply with *Miranda*. *See generally* Filing 118; Filing 119; Filing 170. Under Federal Rule of Criminal Procedure 12, a request for the suppression of evidence "must be raised

8

by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). Ausherman has not asserted that the voluntariness of his post-arrest statements or any alleged *Miranda* issues were not "reasonably available" when he filed his Motion to Suppress in August 2025, and he has not asserted that there is good cause for the Court to consider those arguments now. Fed. R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause."). The Court is therefore inclined to overrule Ausherman's motion for a voluntariness hearing. *See United States v. Turner*, 125 F.4th 892, 895–96 n.2 (8th Cir. 2025) (noting that the district court overruled the defendant's involuntariness objection to the admission of his statements to law enforcement because the defendant failed to raise involuntariness in his pretrial motion to suppress but declining to address the issue further).

Nevertheless, the Court will inquire of the Government outside of the presence of the jury whether indeed Ausherman was given a *Miranda* warning. If a *Miranda* warning was given, this objection has no merit. If there is some reasonable dispute that the *Miranda* warning was not given or was not sufficient, the Court will briefly address that concern with the interviewing officer prior to the testimony at issue. *See* 18 U.S.C. § 3501(a). ("In any criminal prosecution brought by the United States . . . a confession . . . shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness.").

5. *Submotion 5: Motion for Rule 104(a) Hearing on Digital Evidence*

Submotion 5 seeks a "pretrial hearing requiring the government to establish the authenticity, chain of custody, authorship, and attribution of any" digital evidence that the Government intends

to offer, including "phone extraction[s], screenshot[s], chat log[s], WhatsApp or Telegram message[s], or device report[s]." Filing 227 at 2. Ausherman argues that "screenshots and extracted messages cannot simply be waved in front of the jury and assumed to belong to Mr. Ausherman." Filing 229. Rule 901 of the Federal Rules of Evidence provides that in order to authenticate evidence, the proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "Exhibits depicting online content may be authenticated by a person's testimony that he is familiar with the online content and that the exhibits are in the same format as the online content." United States v. Needham, 852 F.3d 830, 836 (8th Cir. 2017). Rather than ruling on Submotion 5 in the abstract, the Court will deny the motion without prejudice to reassertion at such a time when Ausherman believes the Government has not laid sufficient foundation for an exhibit. Furthermore, Court does not find that "justice so requires" that the question of authenticity of digital exhibits be addressed in a hearing outside the presence of the jury. Fed. R. Evid. 104(c)(3).

6. *Submotion 6: Motion in Limine to Exclude Residence-Search Evidence Not Specifically Tied to Defendant*

In Submotion 6, Ausherman seeks the exclusion of "firearms-adjacent items, paraphernalia, and other residence-search evidence not specifically linked to him, including hearsay accusations by other occupants, unless the government first establishes admissibility outside the presence of the jury." Filing 227 at 2. According to Ausherman, the Government "intends to rely on evidence seized from a residence occupied by multiple people" that Ausherman did not live at "full-time." Filing 229 at 4. Like many of Ausherman's petitions, Submotion 6 appears to be a blanket request that the Court enforce the Federal Rules of Evidence at trial. The Court assures Ausherman that it will do so. As with Submotions 1 and 5 before, the Court concludes that justice does not require a hearing

outside the presence of the jury and the Government will not be required to try its case twice. Ausherman may of course make appropriate objections to specific evidence offered during the trial. However, the Court will not generally exclude broad categories of evidence at this time. Ausherman must properly object, if he so desires, at the time any such evidence is offered.

7. *Submotion 7: Motion to Require Itemized Chain-of-Custody and Quantity Proffer*

Ausherman also "moves for an order requiring the government to identify before trial the seizure, custody, packaging, weighing, testing, and proposed trial quantity for each narcotics exhibit, and to bar unreconciled quantity testimony or argument." Filing 227 at 2. Ausherman argues that "[t]he current record reflects inconsistent descriptions of what was found in the vehicle: the trial brief says about 8 grams; discovery notes mention 12.5 grams and 31 pills; the officer narrative reportedly says approximately 11 grams; and defense argument at the suppression hearing referenced 1.9 grams and 10 grams in a gym bag." Filing 229 at 4. Ausherman acknowledges that "[t]hose inconsistencies may be explainable" but contends that "they should be explained before the jury hears a shifting factual account." Filing 229 at 4.

As the Court has previously stated, it will consider appropriate evidentiary objections made at trial—including objections raised to testimony or exhibits discussing the quantity of methamphetamine involved in this case. However, the Court will not preemptively "reconcile" quantity testimony or argument as Submotion 7 requests. If differing quantity evidence is properly admitted under the Federal Rules of Evidence, then it is purely the province of the jury to decide what facts to believe. At this time the Court also will not order the Government to produce an "itemized chain-of-custody" before offering the methamphetamine seized in this case. Filing 227 at 2. The Eighth Circuit has emphasized that "[t]he chain of custody does not have to be perfect. All that is required is testimony that the evidence in question was the same as that involved in the offense

and that it is substantially unchanged." *United States v. Edwards*, 111 F.4th 919, 925 (8th Cir. 2024) (internal quotation marks omitted) (quoting *United States v. Johnson*, 688 F.3d 494, 505 (8th Cir. 2012)). The Government has represented that it will offer the methamphetamine and that it will call the law enforcement agents who seized it and booked it into property to testify as to its authenticity. Filing 218 at 2–3. This approach is not inherently improper under the law, so the Court will not preclude it. *See, e.g.*, *Edwards*, 111 F.4th at 925 (finding no error in the district court's decision to admit cocaine based on testimony that "the cocaine was in a similar condition at trial as when an officer found it in the rental car; the cocaine remained in the car while an officer waited at the scene for a tow truck; an officer followed the car as it was towed to the sheriff's office; upon the car's arrival at the sheriff's office, the cocaine was processed as evidence, labeled, and stored in a secure evidence locker accessible only by evidence technicians; an officer checked the cocaine out of the secure evidence locker and transported it to a separate laboratory for further testing; and that laboratory's forensic scientist followed a meticulous process for the handling, tracking, and possessing of the cocaine before it was returned to law enforcement"). If Ausherman perceives specific grounds for objecting to the Government's offering of the methamphetamine during trial, he may raise those objections then.

8.  *Submotion 8: Motion in Limine to Limit Expert and "Training and Experience" Testimony*

Submotion 8 asks the Court to "prohibit expert or law-enforcement opinion testimony that merely profiles conduct, vouches for guilt, or relays hearsay under the label of narcotics expertise." Filing 227 at 3. Ausherman made this motion before the Government filed its Notice of Expert Witness Testimony Pursuant to Rule 16(a)(1)(G), Filing 234, so it is a broad request that the Court hold the Government to the Federal Rules of Evidence regarding expert testimony. Rather than

ruling in the abstract, the Court denies Submotion 8 and addresses Ausherman's specific objections to the Government's proffered expert in Section II.B. below.

### 9. Submotion 9: Request for Limiting Instructions

Finally, Ausherman "requests contemporaneous and final limiting instructions on any evidence admitted for a restricted purpose, including other-act evidence, investigative-background evidence, and any co-defendant or association evidence." Filing 227 at 3. As will be reiterated at the pretrial conference on April 20, 2026, the defense must offer any instructions it wishes the Court to give in writing with authority supporting the need to give the instruction at least 24 hours before anticipated closing arguments in the case. The Court will give leave to provide such proposed instructions within 24 hours of closing arguments if good cause is shown through the circumstances of the trial. Accordingly, Submotion 9 is denied without prejudice to reassertion at trial.

### B. Ausherman's Second Motion in Limine (Filing 240)

Ausherman filed his second Motion in Limine, Filing 240, in response to the Government's Notice of Expert Witness Testimony Pursuant to Rule 16(a)(1)(G), Filing 234. In that Notice, the Government represents that it may seek to elicit the expert testimony of Sergeant William Koepke, a 33-year veteran of the Lincoln Police Department who has testified as an expert witness in numerous federal and state trials. Filing 234 at 1–2. Regarding Ausherman's trial, the Government proffers that:

> Sgt. Koepke will testify about drug manufacture and distribution, with an emphasis on methamphetamine distribution from Mexico. Sgt. Koepke will testify about the methods drug distributors located in Mexico use to distribute methamphetamine within the United States. This includes testimony about how the Mexican source of supply will communicate directly with drug customers in Nebraska via telephone or cell phone application and have a local courier deliver the methamphetamine. The Mexican source of supply will direct the drug customer to a location, direct the courier to the same location, and arrange the meeting. These meetings to exchange the methamphetamine are oftentimes very brief. Sgt. Koepke will also testify about

> controlled buys, including surveillance techniques law enforcement use during controlled buys, and the methods law enforcement use to identify a courier after a controlled buy from a Mexican source of supply who arranges the transaction telephonically and utilizes a courier. Sgt. Koepke's testimony may also discuss the price of a pound of methamphetamine in Nebraska around January of 2025.

Filing 234 at 2. The Government indicates that Sergeant Koepke's "expert opinions are based on his personal training, education, experience, and expertise with [the Lincoln Police Department]," and the Government has attached Sergeant Koepke's curriculum vitae outlining his experience, training, and certification. Filing 234 at 2; Filing 234-1.

Ausherman seeks to "exclude or strictly limit the proposed expert testimony of Sergeant William Koepke" pursuant to Rules 401, 402, 403, 702, 703, and 704 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Filing 240 at 1. Ausherman argues that the Government's Notice is "overbroad" and does not "identify specific case-linked opinions, analytical methods, or factual datasets beyond [Sergeant Koepke's] experience." Filing 240 at 2. Ausherman contends that Sergeant Koepke's testimony on "generalized 'methods' used by Mexican suppliers and local couriers" will "invite[ ]" the jury to "compare those generalized patterns to the evidence in this case and infer that Mr. Ausherman must be part of a Mexican-based trafficking network because his alleged conduct fits the profile." Filing 240 at 3. Ausherman describes any "generalized" testimony as "unhelpful," "unreliable," and "substantially more prejudicial than probative." Filing 240 at 3. Additionally, Ausherman asks the Court to preclude Sergeant Koepke from offering any opinions on Ausherman's "mental state, knowledge, or ultimate guilt" and from "summariz[ing] or bless[ing]" the actions of law enforcement in this case. Filing 240 at 4. Finally, Ausherman "requests that the Court determine if there is a need to conduct a pretrial Daubert/Rule 104(a) hearing outside the presence of the jury." Filing 240 at 4.

14

Ausherman's second Motion in Limine is denied. First, the Court finds that the Government's Notice of Sergeant Koepke's expert testimony is proper under Federal Rule of Criminal Procedure 16. "Fed. R. Crim. P. 16(a)(1)(G) requires the government to disclose, upon request, a summary 'describ[ing] the [expert] witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.'" *United States v. Spotted Horse*, 914 F.3d 596, 601 (8th Cir. 2019). As the Eighth Circuit has explained, "[t]he rule does not require a recitation of every piece of information in the case that the expert reviewed. It requires notice, in summary fashion, of the expert's opinions, bases for the opinions, and reasons for the opinions." *Id.* The Government's Notice meets that standard and it satisfies Rule 16's purpose of "providing a fair opportunity for the defendant to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii).

Second, the Court concludes that Sergeant Koepke's proffered testimony is proper expert testimony under the Federal Rules of Evidence and *Daubert*. Pursuant to Rule 702, expert opinion testimony is admissible if (1) "the testimony [is] useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant"; (2) "the expert [is] qualified to assist the finder of fact"; and (3) "the testimony [is] reliable or trustworthy in an evidentiary sense." *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation*, 9 F.4th 768, 777 (8th Cir. 2021) (citing *Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 561 (8th Cir. 2014)); Fed. R. Evid. 702. Sergeant Koepke's proffered testimony meets these standards and has sufficient probative value such that the Court finds "it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the [C]ourt at the outset." *Johnson*, 754 F.3d at 562. Indeed, the Eighth Circuit decided as much in *United States v. Schwarck*, 719 F.3d 921 (8th Cir. 2013), when it concluded that another judge of this Court did not abuse his discretion by admitting the

testimony of Sergeant Koepke—then a 20-year officer with ten years of experience in the narcotics unit—regarding the distribution of methamphetamine.

Sergeant Koepke's proffered testimony is relevant because "[t]he business of drug trafficking and the modus operandi of drug dealers are matters unfamiliar to jurors," *United States v. Robertson*, 387 F.3d 702, 704 (8th Cir. 2004), and it will be useful to "explain[ ] the significance of evidence that would not be familiar to average jurors with no previous exposure to the drug trafficking business," *Schwarck*, 719 F.3d at 924. Ausherman suggests that Sergeant Koepke's testimony, as set forth in the Government's Notice, will "invite[ ]" jurors to "infer that Mr. Ausherman must be part of a Mexican-based trafficking network because his alleged conduct fits the profile." Filing 240 at 3. While it is true that "'drug courier' profile evidence" is "generally inadmissible" because it "involves nothing more than the introduction of investigative techniques that law enforcement officers use to identify potential drug couriers," the Court does not believe Sergeant Koepke's evidence, as proffered, crosses that line. *United States v. Holmes*, 751 F.3d 846, 851 (8th Cir. 2014) (internal quotation marks and citations omitted). Instead, Ausherman himself has represented that his theory of the case is that "the evidence shows a buyer-seller relationship or personal-use possession, not knowing participation in a broader conspiracy," Filing 240 at 2, and Sergeant Koepke's proffered testimony will be "relevant to rebut [Ausherman's] defense that he was merely a drug user and not a trafficker," *Schwarck*, 719 F.3d at 924.

Sergeant Koepke's "knowledge, skill, training, experience or education will assist a trier of fact in understanding the business of drug trafficking." *Robertson*, 387 F.3d at 704. "In drug cases, courts frequently admit expert testimony relating to the modus operandi of drug dealers, where the expert witness is a law-enforcement officer whose only qualification is experience in the field." *Holmes*, 751 F.3d at 850. According to the Government's Notice, Sergeant Koepke has 33 years of

16

experience with the Lincoln Police Department, including more than 24 years with the Narcotics Task Force. Filing 234 at 2. In those 33 years, he has testified as an expert witness in federal court more than 20 times. Filing 234-1 at 2. Sergeant Koepke has received extensive training in various topic areas, including 36 hours of training on "Mexican Cartels and Gangs, Drugs, and Human Trafficking." Filing 234-1 at 1. Accordingly, the Court finds that Sergeant Koepke is sufficiently qualified for the jury to hear his testimony.

Sergeant Koepke's proffered testimony is also sufficiently reliable to be heard by the jury. In *Daubert*, the Supreme Court set out "four non-exclusive factors" for courts to consider in determining whether expert testimony is reliable: "(1) whether the expert's theory or technique can be or has been tested, (2) whether the theory or technique has been subjected to peer review or publication, (3) the known or potential rate of error of the theory or technique, and (4) whether the technique or theory is generally accepted." *In re Bair Hugger*, 9 F.4th at 777. When an expert's testimony is "non-scientific evidence," "not all of the *Daubert* factors [will] necessarily apply." *Holmes*, 751 F.3d at 850. The Eighth Circuit has explained that "[e]xpert testimony must rest on reliable principles and methods, but the 'relevant reliability concerns may focus upon personal knowledge or experience' rather than scientific foundations." *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). The Eighth Circuit "has repeatedly approved of law enforcement officials testifying as experts on the modus operandi of drug dealers," stating that "[t]he reliability of such evidence comes not from scientific foundations but from [the officer's] personal knowledge and experience." *Id.* Here, the Government's Notice suggests that Sergeant Koepke has substantial personal knowledge of and experience with drug trafficking generally and drug trafficking with a Mexican source of supply specifically. The Court will therefore allow the jury to hear Sergeant Koepke's expert testimony and decide for itself how to weigh the evidence.

Third, the Court denies without prejudice to reassertion at trial Ausherman's requests that the Court "preclude any opinion on Defendant's mental state, knowledge, or ultimate guilt" and "preclude hearsay-narrative and investigative summation under the guise of expert opinion." Filing 240 at 4. As the Court has emphasized many times already, the Federal Rules of Evidence will apply in full force at Ausherman's trial. The Court trusts counsel for both parties will comply with the Rules, and the Court will consider any specific objections under the Rules as they arise at trial.

Finally, the Court determines a *Daubert* hearing is unnecessary in this case because the Court concludes from the record that "it is more likely than not" that Sergeant Koepke is qualified to testify as an expert on "drug manufacture and distribution, with an emphasis on methamphetamine distribution from Mexico." Fed. R. Evid. 702; Filing 234 at 2; *see also United States v. Solorio-Tafolla*, 324 F.3d 964, 965 (8th Cir. 2003) ("There is no requirement that the District Court always hold a *Daubert* hearing prior to qualifying an expert witness under Federal Rule of Evidence 702."). Ausherman's second Motion in Limine is therefore denied.

### III. CONCLUSION

For the foregoing reasons, Ausherman's first Motion in Limine is granted in part and denied in part. The first Motion in Limine is granted as to Submotion 4 and denied without prejudice to reassertion at trial as to all remaining subparts. The second Motion in Limine is denied. Accordingly,

IT IS ORDERED:

1. Defendant Philip D. Ausherman's first Motion in Limine, Filing 227, is granted as to Submotion 4 seeking a voluntariness hearing outside the presence of the jury and denied without prejudice to reassertion at trial in all other respects; and

2. Ausherman's second Motion in Limine, Filing 240, is denied.

Dated this 18th day of April, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge